**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD BILIK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12-cv-04532 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| MARCUS HARDY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This case concerns allegations that the numerous Defendants, individually and in their official capacities, were deliberately indifferent to Plaintiff Richard Bilik's serious medical needs in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution. As alleged in the complaint,[1] the events giving rise to Bilik's claims span nine years, during which time Bilik was incarcerated at four different Illinois Department of Corrections ("IDOC") facilities, and involve 37 named individual Defendants, as well as multiple John and Jane Doe defendants. Pending before the Court is a motion to dismiss the claims against them filed by Defendants Marcus Hardy, Landria Dennis, and Nancy Ponovich. (Dkt. No. 102.) For the reasons detailed below, that motion is granted in part and denied in part. And moreover, pursuant to 28 U.S.C. § 1915(e)(2)(b), the Court dismisses all other claims against all Defendants, except for the lactose-intolerance claim asserted against Defendants Hardy and Kim Butler.

---

[1] The operative complaint in this action, which was filed by pro bono counsel recruited by the Court to assist Bilik, attempts to consolidate Bilik's claims from two separate lawsuits: *Bilik v. Hardy et al.*, Case No. 12-cv-4532 (N.D. Ill.), and *Bilik v. Hardy et al.*, Case No. 12-cv-6325 (N.D. Ill.). For the reasons detailed here, the Court does not find this to be a viable approach and, to the extent Bilik continues to pursue all of his claims, he will need to do so in two separate actions.

# BACKGROUND

For purposes of Defendants Hardy, Dennis, and Ponovich's motion to dismiss, this Court accepts as true all well-pleaded facts and views them in the light most favorable to Bilik. *See, e.g.*, *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). The Court applies the same standard in considering the sufficiency of Bilik's consolidated complaint for purposes of § 1915(e)(2)(b). *See Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011).

Bilik is currently incarcerated at Pickneyville Correctional Center. At the times relevant to his complaint, however, Bilik was incarcerated at the following IDOC institutions:

- Western Illinois Correctional Center ("Western") from March 8, 2007 to February 2009;

- Stateville Correctional Center Northern Receiving and Classification Unit ("Stateville NRC") from February 8, 2010 to June 16, 2010;

- Hill Correctional Center ("Hill") from June 16, 2010 to July 14, 2010;

- Stateville Correctional Center ("Stateville") from July 14, 2010 to August 6, 2010; and

- Menard Correctional Center ("Menard") from June 14, 2010 to February 2, 2016.[2]

(Cons. Compl. ¶¶ 3–6, Dkt. No. 87.) As detailed below, Bilik alleges that Defendants, as employees of the IDOC or Wexford Health Sources, Inc. ("Wexford")[3] working at Western,[4]

---

[2] There appears to be an error in Bilik's alleged timeline. Based on the complaint, he was housed at Menard during the same time periods he was housed at Hill and Stateville. The Court assumes that this is a simple error.

[3] The following named Defendants were employees of Wexford: Diane Schwarz, a medical doctor at Stateville and Hill; Shanai Barnett, a licensed practical nurse at Stateville; Dolores Trevino, a nurse at Stateville; Athena Rossiter, a licensed practical nurse at Stateville; Gary Drop, a licensed practical nurse at Stateville; Stacey Keagle, a licensed practical nurse at Stateville; Lawanda Frazier-Banks, a CNII at Stateville; Priscilla Seybert, a CNII at Stateville; and Robert Shearing, a doctor at Menard.

[4] The following named Defendants were employees of the IDOC or Wexford at Western: S. Scott, a Wexford nurse; R. Thompson, a Wexford medical staff member; Larson, a Wexford doctor; Brown, a Wexford doctor; D. Drenner, a Wexford medical staff member; S. Brink, a Wexford nurse; Jane Doe,

Stateville,[5] Hill,[6] and Menard,[7] or as officials of the State of Illinois,[8] deprived him of basic

sustenance and adequate medical care.

## I.     MRSA Infection

Bilik alleges that the Stateville and Wexford Defendants violated his Eighth and

Fourteenth Amendment rights by failing to treat his Methicillin-Resistant Staphyloccus Aureus

("MRSA") infection. Bilik claims that his MRSA infection stemmed from the unsanitary

conditions of his Stateville cell. The staff refused to distribute cleaning supplies on a regular

basis, making it difficult for Bilik to clean his cell. He repeatedly submitted grievances about the

lack of cleaning supplies. (*Id.* ¶ 35.) Those grievances were acknowledged but nothing was done

to remedy the problem. (*Id.* ¶ 36.) Consequently, inmates were confined to filthy cells. (*Id.*)

On or about June 9, 2010, Bilik began to develop an extremely painful growth on his face

that looked like a boil. (*Id.* ¶ 39.) At first, Bilik thought it was a spider bite, and he begged the

with the initials K.R., a Wexford practical nurse; C. Thornton, a Wexford practical nurse; P. Ellis, a Western medical staff member; Jane Doe, with the initials S.R., a Wexford practical nurse; and H. Lochard, a Wexford doctor.

[5] The following named Defendants were employees of IDOC who worked at Stateville or Stateville NRC: Marcus Hardy, Warden of Stateville; Nancy Ponovich, Superintendent of Stateville NRC; Landria Dennis, correctional counselor at Stateville NRC.; A. Johnson, correctional officer; P. Mroz, correctional officer; A. Bond, correctional officer; T. Valenzuela, correctional officer; Townsend, correctional officer; Novahcvic, correctional officer; Alegbeleye, correctional officer; M. Williams, correctional officer; J. Brooks, correctional officer; R. Lund, CWOO at Stateville; Amesymita, COO of Stateville; C. Coleman, correctional officer; T. Woodcock, correctional officer; and Sargent John Doe #1.

[6] The following named Defendants were employees of IDOC who worked at Hill: D. Clark, intake officer; S. Taet, Wexford registered nurse; Amy John, PAC at Hill; Lieutenant John Doe #2; Movement Correctional Officer John Doe #3; Correctional Officer John Doe #4; Wexford Nurse Jane Doe #1; Wexford Nurse Jane Doe #2; and Wexford Nurse John Doe #3.

[7] The following named Defendants were employees of IDOC who worked at Menard: Kim Butler, Warden of Menard; Jacqueline Lashbrook, Assistant Warden at Menard; Counselor Jane Joes (1-3) and Counselor John Does (1-3); Grievance Officer Jane Joes (1-3) and Grievance Officer John Does (1-3); Correctional Officer John Does (1-3); Food Supervisor John Does (1-3); and Federke, a sergeant.

[8] The following state actors are sued in their official capacities: Bruce Rauner, Governor of the State of Illinois; John Baldwin, Director of IDOC; and Louis Shicker, Medical Director of IDOC.

correctional officers on staff for medical attention. (*Id.* ¶ 40.) As it turns out, however, Bilik was suffering from a MRSA infection. (*Id.* ¶ 41.) The infection caused such swelling and pain that Bilik was unable to eat or sleep, and frequently wept. (*Id.* ¶¶ 42, 47.) Notwithstanding the fact that his face was noticeably swollen and he repeatedly cried out for help, Bilik's MRSA infection was left untreated for approximately one week at Stateville before his transfer to Hill. (*Id.* ¶ 43.) Once he was transferred to Hill, Bilik's condition was diagnosed as a MRSA infection and he was provided with medication. (*Id.* ¶ 46.)

## II. Cranial Cyst

For some time, Bilik has suffered from a large cranial cyst protruding from his vertex. (*Id.* ¶ 48.) It is unclear from the complaint when this cyst first developed, but Bilik claims that the cyst causes him constant excruciating headaches, including migraines. (*Id.* ¶ 8.) The pain relievers prescribed by the Western, Stateville, Hill, and Wexford Defendants did nothing to relieve Bilik's suffering; nonetheless, these Defendants refused to remove the cyst. (*Id.* ¶ 49.) It was not until an intervening incarceration at Cook County Jail on April 12, 2012 that the cyst was finally removed at Stroger Hospital. (*Id.* ¶ 50.) Following the surgery, however, the cyst grew back, causing Bilik once again to experience intense headaches and migraines. The headaches were so strong that medical staff at Menard attempted to treat them with Mobic, the strongest pain-relief medication that Wexford will prescribe. This pain reliever was ineffective, however. (*Id.* ¶ 52.) Indeed, the cyst remained so painful that Bilik was unable to stand for long periods of time, which prevented him from going outside for three years. (*Id.* ¶ 53.)

Notwithstanding the ineffectiveness of the occasionally-prescribed pain relievers, all Defendants at all IDOC facilities deemed removal of the large cranial cyst to be "elective" and refused to prescribe the procedure. (*Id.*) Defendants' reason for refusing Bilik the requested

medical treatment was the purported cost of the procedure. The Stateville Defendants also provided a second reason for not removing the cyst—that Bilik only had two years remaining on his sentence. (*Id.* ¶ 54.)

### III. Lactose Intolerance

After spending a short period of time at Cook County Jail, Bilik was transferred to Stateville on or about February 8, 2010. (*Id.* ¶ 55.) Upon his arrival at Stateville, Bilik was examined by several doctors, physician assistants, nurses, and medical technicians. (*Id.* ¶ 56.) Bilik told these medical staff members that he was lactose intolerant and eating dairy products causes him intense intestinal pain. (*Id.* ¶ 57.) Nonetheless, Bilik was repeatedly served dairy products throughout his stay at Stateville. (*Id.* ¶ 58.) On numerous occasions, Bilik asked Stateville correctional officers to accommodate his lactose intolerance. (*Id.* ¶ 59.) But the officers' only response was to tell Bilik that there were no special diet trays. (*Id.* ¶ 60.) Bilik was forced to consume the dairy products served to him, and he consequently suffered. (*Id.* ¶ 62.) The dairy products gave Bilik diarrhea, severe cramping, and flatulence. (*Id.* ¶ 63.) Annoyed by his flatulence, Bilik's cellmates routinely threatened him and, on two occasions, beat him. (*Id.* ¶ 63.) The threats and beatings from his inmates caused Bilik to live in constant fear for his life and safety. (*Id.* ¶ 64.)

After being denied grievance forms for approximately a week, Bilik was eventually able to submit a grievance on March 20, 2010 regarding the lack of dairy-free food. (*Id.* ¶ 67.) Bilik sent a second grievance on March 23, 2010. (*Id.*) Contemporaneously with those grievances, Bilik also submitted weekly request slips to healthcare and sick call. (*Id.* ¶ 69.)

Around March 26, 2010, Bilik was prescribed Lactaid tablets by Defendant Diane Schwarz, then a medical doctor at Stateville. (*Id.* ¶ 72.) The Lactaid pills proved ineffective, and

eventually Schwarz stopped giving Bilik that medication. (*Id.*) On March 31, 2010, Hardy, then

the Warden of Stateville, responded to Bilik's grievances and request slips, stating that the

problem was not an emergency and denying Bilik's plea for dairy-free meals. (*Id.* ¶¶ 68, 70.)

Also on March 31, 2000, Defendant Dennis, then a correctional officer at Stateville, responded to

Bilik's second grievance dated March 23, 2010, stating that "medical records indicate offender

Bilik was seen by the physician's assistant on March 26, 2010 and was given meds[] for his

medical concerns." (*Id.* ¶ 71.) Bilik continued to submit medical requests on a weekly basis, but

the Stateville Defendants did nothing. (*Id.* ¶ 75.) On July 1, 2010, Defendant Dennis answered

another of Bilik's grievances stating that "this counselor has been told by [Stateville] Medical

Staff that they do not provide special diet trays to offenders even in cases of food allergies." (*Id.*

¶ 76.)

Eventually, Bilik was transferred to Menard, where he was also given dairy products at

mealtime. (*Id.* ¶ 78.) At Menard, grievance forms were virtually impossible to obtain, making the

grievance procedure unavailable to inmates. (*Id.* ¶ 79.) Bilik was nonetheless able to submit

some grievances. (*Id.* ¶ 80.) In response, Defendants Kim Butler and Jacqueline Lashbrook,

respectively the Warden and Assistant Warden of Menard, through Defendant Federke, a

sergeant, told Bilik to "stop grieving" and performed retaliatory shake downs of Bilik's cell

during which his belongings would get tossed about for no reason. (*Id.*) The correctional officers

also retaliated against Bilik by refusing to refer him to the medical technician. (*Id.* ¶ 83.)

Nonetheless, Bilik continued to complain to correctional officers about his dietary restrictions.

(*Id.* ¶ 85.) Despite being advised of Bilik's lactose intolerance, the Menard Defendants failed to

assist Bilik by either providing lactose-free meals or directing him to a medical technician. (*Id.*

¶ 86.) Consequently, during his time at Menard, Bilik was forced to purchase virtually all his meals from the prison commissary. (*Id.* ¶ 87.)

## IV. Allegations Relating to the *Lippert v. Godinez* Report

In addition to allegations regarding Bilik's lack of medical care, the complaint also incorporates allegations of systemic deficiencies relating to lack of medical staff, inadequate medical records, and insufficient medical facilities at all IDOC correctional facilities. (*Id.* ¶ 91–93.) Bilik bases these allegations on an expert report prepared in *Lippert v. Godinez*, No. 10-cv-4603, 2015 WL 3777551 (N.D. Ill. June 16, 2015). (*Id.* ¶ 91.) Bilik specifically focuses on the findings regarding Stateville, noting the following alleged deficiencies at that facility: (1) a number of vacant positions; (2) a lack of appropriate clinical space; (3) delays in medical processing; and (4) poor quality medical records. (*Id.* ¶¶ 93–97.) While Bilik pays particular attention to Stateville's alleged deficiencies, he also broadly condemns the lack of adequate healthcare resources and staffing at all IDOC facilities. (*Id.* ¶ 103.) Bilik also alleges that there is little or no supervision of the medical services provided by the Wexford Defendants, thus permitting Wexford to largely monitor itself, which results in an untenable conflict of interest. (*Id.* ¶¶ 104–05.) Bilik does not allege that any of these system-wide policies caused the denial of his own medical care.

## V. Procedural History

Bilik filed his initial complaint on June 11, 2012. (Initial Compl., Case No. 12-cv-4532, Dkt. No. 1.) That initial complaint named Marcus Hardy, Diane Schwarz, and the Illinois Department of Corrections as Defendants. (*Id.* at 2.) The complaint contained numerous claims, including allegations regarding lack of medical treatment for his cranial cyst and MRSA infection, and a failure to provide food that accommodated his lactose intolerance. In reviewing

the initial complaint pursuant to 28 U.S.C. § 1915A, this Court held that Bilik had alleged several unrelated claims that were improperly joined, and consequently dismissed the complaint without prejudice. (Case No. 12-cv-4532, Dkt. No. 7.) This Court advised Bilik to file his cranial cyst and MRSA claims separately from his conditions of confinement claims (which included allegations regarding the lack of dairy-free food). (*Id.*) Bilik complied with this Court's order and filed his lactose-intolerance claim under the new case number 12-cv-06325 on July 15, 2012. (*See* Case No. 12-cv-06326, Dkt. No. 1.) Meanwhile, Bilik filed an amended complaint regarding his MRSA and cranial-cyst claims under the original case number, 12-cv-04532, on July 15, 2012. (*See* Case No. 12-cv-04532, Dkt. No. 9.)

Thereafter, Bilik filed a motion to consolidate his complaints (Case No. 12-cv-04532, Dkt. No. 18), which this Court denied, (Case No. 12-cv-04532, Dkt. No. 25.) The Court did, however, grant Bilik's motions for attorney representation in both cases and recruited the same counsel to represent him in each. Then, on May 13, 2016, Bilik filed a consolidated complaint, incorporating claims from case numbers 12-cv-06325 and 12-cv-04532. (*See* Case No. 12-cv-04532, Dkt. No. 87.) This consolidated complaint was filed under case number 12-cv-04532 and is the only operative complaint.

## DISCUSSION

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Defendants Hardy, Dennis, and Ponovich move to dismiss Bilik's claims against them on two primary grounds: (1) his claims are barred due to insufficient service and failure to timely file; and (2) he has failed to allege facts sufficient to state a claim upon which relief can be granted. Although the remaining Defendants have neither joined in the motion to dismiss nor filed their own responsive pleading, this Court can nonetheless address the entire complaint and all named Defendants pursuant to the directions in 28 U.S.C. § 1915(e) and § 1915A(b). Pursuant to Sections 1915(e) and 1915A(b), this Court may dismiss an *in forma pauperis* prisoner suit *sua sponte* if it appears at any time that the action fails to state a claim upon which relief can be granted. *See Hughes v. Godinez*, No. 15-cv-01685, 2015 WL 8519521, at *7 (N.D. Ill. Dec. 11, 2015).

## I. MRSA Infection

The Court turns first to Bilik's claims that the Stateville and Wexford Defendants were deliberately indifferent to his MRSA infection.

A "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives another "person within the jurisdiction of [the United States] . . . of any [constitutional] rights . . . shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Prisoners enjoy a constitutional right not to be subjected to cruel and unusual punishment. U.S. Const. amend. VIII. That right includes "a right to adequate medical care." *See Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). To state a claim for constitutionally deficient medical care, a plaintiff "must demonstrate two elements: (1) an objectively serious medical condition; and (2)

an official's deliberate indifference to that condition." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011).

There are two different standards of deliberate indifference applicable in this case: one for prison officials and one for medical personnel. Overall, "[t]he Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). To state an Eighth Amendment claim based on deficient medical care, a plaintiff must allege an objectively serious medical condition and an official's deliberate indifference to that condition. *Arnett*, 658 F.3d at 751. Bilik has adequately pleaded that his MRSA infection was an objectively serious medical condition. *See Myrick v. Anglin*, 496 Fed. App'x 670, 674 (7th Cir. 2012) (plaintiff whose MRSA caused "excruciating pain" demonstrated "a sufficiently serious condition to support an Eighth Amendment claim").

Prison officials generally are "entitled to relegate to the prison's medical staff the provision of good medical care." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). However, the Seventh Circuit has recognized that even when a prisoner is under medical supervision, a prison official may be held liable for deliberate indifference to the prisoner's serious medical needs if that prison official has "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Arnett*, 658 F.3d at 755 (quoting *Hayes v. Snyder*, 546 F.3d 516, 525 (7th Cir. 2008)). Thus, deliberate indifference claims may proceed against non-medical prison authorities when the pleadings indicate that those officials had actual, subjective knowledge of improper treatment. *See id.* at 755.

One way a prison official may obtain actual knowledge of an inmate's serious medical condition and inadequate medical care is through grievances or other correspondences. *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015); *see also Martinez v. Garcia*, No. 08-cv-2601, 2012 WL 266352, at *5 (N.D. Ill. Jan. 30, 2012) (finding that a warden's "failure to take action despite receiving both a letter and an in-person communication" in which the plaintiff "informed him of the medical staff's refusal to treat him, coupled with [the prison doctor's] unresponsive memos, suffices to defeat" the warden's motion for summary judgment on a deliberate indifference claim). Alternatively, a serious medical condition may be so obvious that even a lay person could perceive the need for a doctor's attention. *See Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). But even if non-medical officials are aware of a medical need, they are generally permitted to rely on decisions made by medical personal. *See Hardy v. Wexford Health Sources, Inc.*, No. 12-cv-6554, 2015 WL 1593597, at *7–8 (N.D. Ill. Apr. 2, 2015).

Meanwhile, medical professionals are liable for deliberate indifference if they make a decision that is "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)). Ultimately, the "decision of a medical professional to do nothing, even though she knows that a patient has a serious medical condition requiring prompt treatment that the professional is capable of and responsible for providing, amounts to deliberate indifference." *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015).

In applying this deliberate-indifference framework, the Court notes several deficiencies with respect to Bilik's MRSA claim. First, Bilik does not specifically identify which nonmedical prison officials had actual knowledge of his MRSA infection and how they obtained that

knowledge. For example, Bilik alleges that his face was noticeably swollen, but he does not provide information about who exactly saw his face and therefore was responsible for contacting medical authorities. Second, Bilik conflates the Stateville Defendants' knowledge of his dirty cell with knowledge of his MRSA infection. However, a filthy cell is a circumstance separate and distinct from Bilik's medical condition. Finally, Bilik has made no allegations whatsoever as to how any of the individual Wexford Defendants were deliberately indifferent to his medical condition. To state a claim, he must at least allege that the Wexford Defendants knew about his medical condition and failed to act according to accepted professional standards.

For these reasons, Bilik's MRSA claim is dismissed without prejudice in its entirety.

## II.    Cranial Cyst

The same general problem that plagues Bilik's MRSA claim also dooms his cranial cyst claim. Bilik alleges that all 37 named Defendants, across four separate correctional facilities, were deliberately indifferent to his cranial cyst in violation of his Eighth and Fourteenth Amendment rights. But Bilik does not allege who, if anyone, had actual knowledge of his cranial cyst.

To plead deliberate indifference adequately, a plaintiff must allege a prison official's actual awareness of the constitutional violation at issue. Bilik here broadly alleges that Defendants had knowledge of his cranial cyst based on his written grievances, verbal complaints, physical appearance, and medical examinations. Crucially, however, Bilik fails to allege to whom he sent grievances, to which specific correctional officers he verbally complained, with whom he came into contact who saw the cyst, and who gave him a medical examination. This lack of specificity is insufficient to establish actual knowledge and deliberate indifference.

Because Bilik has failed to allege that ***any*** Defendant knew about his cranial cyst, the claim is dismissed as to all Defendants.

### III.    Lactose Intolerance Claim

#### A.    Time-Barred Claims

For his final claim, Bilik alleges that the Stateville, Menard, and Wexford Defendants were deliberately indifferent toward his lactose intolerance. According to Defendants Hardy, Dennis, and Ponovich, however, this claim is time-barred.

Dismissal based on a statute of limitations is an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1). Generally, "complaints do not have to anticipate affirmative defenses to survive a motion to dismiss." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). But dismissal is appropriate where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *Id.* In Illinois, the statute of limitations for claims under 42 U.S.C. § 1983 claims is two years. 735 ILCS 5/13-202. "For continuing Eighth Amendment violations, the two-year period starts to run (that is, the cause of action accrues) from the date of the last incidence of the violation, not the first." *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013) A violation is continuing if it "would be unreasonable to require or even permit [plaintiff] to sue separately over every incident of the defendant's unlawful conduct." *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001). For continuing violations, the two-year period "accrues when the defendant has notice of the untreated condition" and typically "ends only when treatment is provided or the inmate is released." *Jervis v. Mitcheff*, 258 Fed. App'x 3, *5–6 (7th Cir. 2007). Here, Bilik alleges deliberate indifference toward his lactose intolerance throughout both of his periods of incarceration at Stateville, as well as during his time at Menard.

Bilik's lactose-intolerance claim is properly considered as two continuing violations corresponding to two separate time periods. Bilik's first period of incarceration at Stateville spanned from February 8, 2010 until June 16, 2010, at which point he was transferred to Hill for a month. Bilik plainly knew about the significance of his claim prior to leaving Stateville, as he made numerous complaints and filed grievances concerning his lactose intolerance during that time period. Once Bilik was transferred from Stateville on June 16, 2010, he had all the information he needed to file a complaint regarding those five months. *See Heard*, 253 F.3d at 318 (stating that a continuing violation lasted "for as long as the defendants had the power to do something about his condition, which is to say until he left the jail").

The parties do not dispute that Bilik filed his initial complaint on June 11, 2012, within the two-year statute of limitations. However, this original complaint only named as Defendants Hardy and Schwarz.[9] It was not until July 15, 2012, when Bilik filed his amended complaint, that numerous other Stateville, Menard, and Wexford Defendants were added as parties. This July 15, 2012 filing falls outside of the statute of limitations with respect to Bilik's first period of incarceration at Stateville—which ended on June 16, 2010. Therefore, the lactose-intolerance claim for the first-period of incarceration is time-barred as to all Stateville Defendants except Hardy and Schwarz.

In response to the motion to dismiss, Bilik argues that his amended pleading should relate back to his original filing, which was timely. Indeed, Federal Rule of Civil Procedure 15(c) allows a plaintiff to add otherwise time-barred claims against new defendants if the claims "relate back" to the original complaint. Fed. R. Civ. P. 15(c). The amended pleading will "relate back" if the proposed defendants "knew or should have known that the action would have been

---

[9] The IDOC was also named in this original complaint but was terminated as an improper Defendant on January 2, 2013.

brought against it, but for a mistake concerning the proper party's identity." *Id.* But Rule 15(c) is inapplicable "[w]hen the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 552 (2010); *see also Perales v. Cty. of LaSalle*, No. 15-cv-10110, 2017 WL 3434229, at *5 (N.D. Ill. Aug. 10, 2017) ("Relating back generally occurs where the proper defendant is already before the court and the Rule can merely correct the name under which the defendant has been sued, but a plaintiff fails to meet the requirements of Rule 15(c) when the original and amended complaint taken together demonstrate that the plaintiff chose not to include the defendant in the original complaint.").

Bilik's failure to name the Stateville and Wexford Defendants in his original complaint was no mistake, but instead was the result of an unfocused and overbroad statement of facts. Rather than discussing the numerous Defendants involved in his claims (at least some of whom he could plainly identify by name, as evidenced by his grievances), Bilik spent a large portion of his original complaint discussing a variety of unrelated claims—including that he was locked in his cell for all but ten minutes per week, he did not receive any state pay, meals were served cold and at inconvenient times, his mattress was lumpy and soiled, he was denied medication for his migraines, he was only permitted to shave once a week, and the mail was backed up for up to two months on a regular basis. When determining whether a claim should relate back, courts ask "whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in addition." *Joseph v. Elan Motorsports Tech. Racing Corp.*, 638 F.3d 555, 559–60 (7th Cir. 2011). Here, it would not be reasonable to expect that the 15 newly-named Stateville Defendants

and the eight newly named Wexford Defendants (most of whom had no contact with Bilik based on the allegations in the complaint) to have anticipated being sued based on the overbroad allegations in Bilik's original complaint.

Consequently, Bilik's lactose-intolerance claim as it pertains to his first period of incarceration at Stateville from February 8, 2010 until June 16, 2010 is time-barred with respect to all Defendants except Schwarz and Hardy. The claim is not time-barred as to Bilik's second period of incarceration at Stateville, from July 14, 2010 to August 6, 2010.

### B. Failure to State a Claim

Although Bilik's lactose-intolerance claim is not entirely time-barred, it still suffers from several deficiencies. Most significantly, despite that Bilik names all Stateville, Menard, and Wexford Defendants as responsible, his complaint only specifically mentions Defendants Hardy, Dennis, Schwarz, Butler, Lashbrook, and Federke. As mentioned above, Bilik cannot broadly assert a claim of deliberate indifference against all Defendants but instead must specifically allege how and when each Defendant was deliberately indifferent to his medical needs. Accordingly, only the allegations with respect to Hardy, Dennis, Schwarz, Butler, Lashbrook, and Federke might conceivably state a claim.

As also noted above, to allege deliberate indifference a plaintiff's complaint must show: (1) that the medial condition is objectively serious, and (2) that defendant had subjective knowledge of the risk to the inmate's health, and nonetheless disregarded this risk. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 301 (7th Cir. 2001). With respect to the first prong of a deliberate indifference claim, an objectively serious medical condition is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person

would perceive the need for a doctor's attention." *Edwards v. Snyder*, 478 F.3d 827, 830–31 (7th Cir. 2007) (internal quotation marks omitted).

At this stage in the proceedings, Bilik has alleged an objectively serious medical condition. *See Jackson v. Gordon*, 145 Fed. App'x 774, 776 (3d Cir. 2005) (holding that the plaintiff's allegation of severe lactose intolerance and egg allergy, which resulted in inadequate meals, was sufficient to state an Eighth Amendment claim). Specifically, Bilik claims that for the years he was at Stateville and Menard, he was forced to eat dairy products, which caused diarrhea, excruciating intestinal pain, and flatulence. The Seventh Circuit has recognized that a prisoner's complaints of chronic pain may be enough to support a claim. *See Greeno*, 414 F.3d at 655 ("[T]here is no requirement that a prisoner provide 'objective' evidence of his pain and suffering—self-reporting is often the only indicator a doctor has a of a patient's condition."). Further, Bilik's consumption of dairy items caused flatulence, which resulted in Bilik being routinely threatened by his cellmates and beaten on two occasions. Thus, according to Bilik the failure to address his dairy allergy caused him to live in constant fear for his safety. Accepting Bilik's allegations as true, the Court concludes that Bilik has articulated an objectively serious medical condition.

With respect to the non-medical prison officials—Hardy, Dennis, Butler, Lashbrook, and Federke—to state a claim Bilik must allege "that the responsible prison officials were subjectively aware of the condition, and consciously disregarded the risk to [his] health or safety." *Hemphill v. Wexford Health Sources, Inc.*, No. 15-cv-04968, 2016 WL 2958449, at *2 (N.D. Ill. May 23, 2016). That is, he "must allege that a prison official, acting with a culpable state of mind, knew of a significant risk to [his] health and disregarded that risk." *Id.* (citing *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). Generally, if an inmate is under the care of

medical experts, "a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Arnett*, 658 F.3d at 755. Non-medical prison officials can, however, be charged with deliberate indifference when they have "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Id.* (quoting *Hayes v. Snyder*, 546 F.3d 516, 525 (7th Cir. 2008)). Inmate correspondence to a prison official may "establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez*, 792 F.3d at 782. After being alerted of a constitutional deprivation, a prison official's refusal to act to remedy the inmate's situation may reflect deliberate indifference. *Id.*

Bilik alleges that he sent grievances regarding his lactose intolerance to Defendants Hardy and Butler. Hardy responded to the lactose-intolerance grievance he received by deeming it a non-emergency and refusing Bilik his requested relief of dairy-free meals; Butler responded by instructing Federke to punish Bilik for his grievances by performing a retaliatory shake-down. Read in the light most favorable to Bilik, the pleadings support a theory that prison doctors were mistreating or not treating Bilik for the entire period he was in custody and that both Hardy and Butler knew about the mistreatment or non-treatment through Bilik's grievances but did nothing to remedy the problem.

Bilik has not, however, alleged that Federke knew about his medical condition—indeed, based on the complaint, Federke was simply complying with Lashbrook's orders to shake-down Bilik's cell. And while Bilik claims that Lashbrook helped coordinate the shake-downs, he does not indicate how Lashbrook knew about the lactose-intolerance issue. Therefore, as to Federke and Lashbrook, Bilik has failed to state a claim of deliberate indifference.

The only medical personnel Bilik specifically references as acting with deliberate indifference towards his lactose intolerance is Schwarz. The bar that Bilik must clear to establish Schwarz's deliberate indifference is high, as such a claim is not equivalent to a medical malpractice claim. Instead, medical professionals such as Schwarz are entitled to deference in their treatment decisions unless no minimally competent professional would have so responded under the circumstances. *Roe v. Elyea*, 631 F.3d 843, 857–58 (7th Cir. 2011). In other words, a medical professional acting in a professional capacity is deliberately indifferent only if the professional's decision was such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the decision was not based on such a judgment at all. *Id.* All Bilik alleges about Schwarz's treatment is that she prescribed him Lactaid tablets. But it is entirely unclear from the complaint when the tablets were prescribed, what Bilik discussed with Schwarz, and whether he saw her again after she prescribed the Lactaid pills—in other words, it is unclear what exactly Schwarz knew about Bilik's medical condition. For these reasons, Bilik has failed to plead a deliberate indifference claim against Schwarz.

In sum, based on the present allegations. Bilik may proceed with his lactose-intolerance claim only against Hardy and Butler. The claims against all other Defendants are dismissed without prejudice.

## IV. Allegations Relating to *Lippert* report

In addition to allegations of deliberate indifference to his individual medical needs, Bilik also alleges that systemic deficiencies at each prison's health care facility resulted in constitutionally inadequate health care for all inmates. Despite spending several pages of his complaint discussing these systemic deficiencies, however, Bilik does not include a separate count with respect to them. Federal Rule of Civil Procedure 10(b) requires that a party limit its

19

claims "as practicable to a single set of circumstances" and that "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." Fed. R. Civ. P. 10(b). The purpose of Rule 10(b), in conjunction with Rule 8, is to "give defendants fair notice of the claims against them and the grounds supporting the claims." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 20111). Because the systemic deficiencies allegations run afoul of Rule 10(b), the Court dismisses any separate claim sought to be asserted based on these allegations. *See Three D Departments, Inc. v. K Mart Corp.*, 670 F. Supp. 1404, 1409 (N.D. Ill. 1987) ("Although Rule 10(b) does not specify the appropriate remedy for violations of its provisions, courts retain the inherent power to order compliance with the rule."). Moreover, the Court also notes that Bilik fails to connect these alleged systemic issues to the facts of *his* case—there are no allegations that the inadequacies alleged in the report impacted Bilik's own medical care in any way. Indeed, the reports that he references were based on prison monitoring and surveys that were done *after* he left the Western, Stateville, and Hill facilities. Bilik also has failed adequately to allege a claim based on systemic deficiencies for this reason as well.

## V.      Failure to Timely Serve Hardy

The Court next addresses the argument in the motion to dismiss that Hardy was not timely served. Federal Rule of Civil Procedure 4(c) requires the plaintiff in a civil action to serve a summons, along with a copy of the complaint, on each defendant within the time allowed by Rule 4(m). Fed. R. Civ. P. 4(c)(1). Under Rule 4(m), a defendant generally must be served within 120 days after the complaint is filed. Fed. R. Civ. P. 4(m).[10] If a defendant is not served within the allotted time, the court must dismiss the action against the defendant unless the plaintiff can show good cause for failure to timely serve. *Tso v. Delaney*, 969 F.2d 373, 375 (7th

---

[10] At the time Bilik filed his original complaint, the deadline within which a defendant had to be served was 120 days. Since then, however, the time to serve has been reduced to 90 days.

Cir. 1992). The plaintiff must show that he engaged in reasonable and diligent efforts to effect service to support a finding of good cause. A plaintiff makes reasonable efforts if he proceeds in a manner reasonably calculated to effect service within the prescribed time. "[H]alf-hearted efforts to serve a defendant will not excuse a plaintiff from adhering to the 120-day deadline." *Geiger v. Allen*, 850 F.2d 330, 333 (7th Cir. 1988).

Bilik first filed his complaint against Hardy on June 11, 2012. Subsequently, Bilik's entire complaint was dismissed before summons issued. After Bilik filed his amended complaint, Defendants Ponovich and Dennis executed waivers of service and an appearance was filed for them on November 12, 2013. But Hardy was not served until more than two years after the original complaint was filed. The Court finds that there was good cause for the delay in service in this case. Given the complex procedural history of this case, the number of Defendants, and the fact that Bilik was initially representing himself *pro se* from prison, the Court finds Bilik's delay in service to be excusable. Therefore, Defendants' motion to dismiss Hardy for failure to timely serve him is denied.

## VI. Severance

Finally, the Court considers whether all Bilik's claims were properly brought in a single complaint. Pursuant to Federal Rule of Civil Procedure 20, different claims against different defendants can be joined in a single suit if the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20. However, as the Seventh Circuit emphasized in *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), unrelated claims against different defendants belong in separate lawsuits. *Id.* at 607. Requiring separate lawsuits not only "prevent[s] the sort of morass" that occurs in a multi-claim, multi-defendant lawsuit, but it also ensures that prisoners pay the filing fees required under the Prison Litigation Reform Act.

*Id.* When unrelated claims are brought in the same suit, "[t]he court may . . . sever any claim against any party." Fed. R. Civ. P. 21.

After considering the consolidated complaint filed by Bilik's recruited counsel in this case, the Court concludes that Bilik's lactose-intolerance claim is an unrelated claim that belongs in a different complaint from his claims based on his MRSA infection and cranial cyst. Bilik's lactose-intolerance claim is based on Bilik's right to receive nutritious food and Defendants' obligation to provide food that does not cause sickness. *See Prude v. Clarke*, 675 F.3d 732, 734 (7th Cir. 2012) ("Deliberate withholding of nutritious food or substitution of tainted or otherwise sickening food, with the effect of causing substantial weight loss, vomiting, stomach pains, and maybe an anal fissure . . . , or other severe hardship, would violate the Eighth Amendment."). As such, the lactose-intolerance claim will likely involve discovery related to Defendants' meal policies and practices, including what food Bilik was provided. In contrast, Bilik's MRSA and cranial-cyst claims stem from his right to receive adequate medical care and, if he can amend his complaint to proceed with those claims, discovery will likely center solely around his requests for treatment and subsequent medical attention. Given these differences, the Court finds that the lactose-intolerance claim does not arise out of the same transaction or occurrence as the MRSA and cranial-cyst claims.

Accordingly, the lactose-intolerance claims will be severed from the other claims. As those claims were originally filed under case number 12-cv-06325, they will proceed forward under that case number. Bilik shall file an amended complaint under case number 12-cv-06325 that focuses on the surviving lactose-intolerance claims. Given the convoluted nature of the consolidated amended complaint, the Court will require the filing of an amended complaint even if Bilik decides to proceed only as to the claims that have survived as currently alleged.

Meanwhile, Bilik's MRSA and cranial-cyst claims, which were originally asserted under case number 12-cv-04532, shall proceed, if at all, under that case number.

## CONCLUSION

For the foregoing reasons, Defendants Hardy, Dennis, and Ponovich's motion to dismiss (Dkt. No. 102) is granted in part and denied in part, and the Court dismisses other portions of the complaint on its own motion pursuant to 28 U.S.C. § 1915(e)(2). Specifically, Bilik's lactose-intolerance claim for his time at Stateville prior to June 16, 2010 is dismissed with prejudice, except as to Defendants Hardy and Schwarz. And the post-July 15, 2010 Stateville lactose-intolerance claim is dismissed without prejudice as to all Defendants except Hardy and Butler. Bilik's MRSA-infection and cranial-cyst claims are dismissed in their entirety without prejudice. Finally, the lactose-intolerance claim is severed from the MRSA infection and cranial cyst claims. Bilik shall file an amended complaint under case number 12-cv-06325 with respect to the surviving lactose-intolerance claims. Should he seek to amend his MRSA and cranial cyst claims, he should do so in a separate amended complaint filed under this case number, 12-cv-04532.

ENTERED:

Dated:  August 24, 2018

_____
Andrea R. Wood
United States District Judge