# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RICHARD BILIK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 12-cv-04532 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| MARCUS HARDY, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard Bilik is an inmate in the custody of the Illinois Department of Corrections. This lawsuit concerns two medical issues Bilik has suffered since he has been incarcerated: first, he suffered a Methicillin-Resistant Staphylococcus Aureus ("MRSA") infection while incarcerated at Stateville Correctional Center ("Stateville"); and later, during his incarceration at Menard Correctional Center ("Menard"), he experienced the regrowth of a cyst on his cranium that caused him substantial pain. Bilik claims he did not receive constitutionally-sufficient medical treatment for either condition. As a result, he has brought the present action under 42 U.S.C. § 1983 against various officials at Stateville and Menard for their deliberate indifference to his medical needs in violation of the Eighth and Fourteenth Amendments. Now before the Court are five motions to dismiss the Third Amended Complaint ("TAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Three Stateville nurses (Defendants Stacey Keagle, Gary Drop, and Athena Rossiter Raheem),[1] and one Menard sergeant (Defendant David Fedderke) have each filed his or her own individual motion to dismiss. (Dkt. Nos. 194, 205, 217, 225.) In addition, the remaining Defendants (with one exception) have filed a

---

[1] In the TAC, Raheem is named as Anthena Rossiter but in her motion to dismiss she goes by Athena Rossiter Raheem. This Court refers to her by what is presumably her correct and preferred name.

consolidated motion to dismiss. (Dkt. No. 210.) For the reasons that follow, the motions filed by Keagle, Drop, Raheem, and Fedderke are all denied, while the consolidated motion is granted in part and denied in part.

## BACKGROUND

For the purposes of the motions to dismiss, the Court accepts all well-pleaded facts in the TAC as true and views the facts in the light most favorable to Bilik as the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

At all relevant times, Bilik was an inmate incarcerated in facilities run by the Illinois Department of Corrections. (TAC ¶ 1, Dkt. No. 182.) On June 9, 2010, while incarcerated at Stateville, Bilik developed a MRSA infection on his face. (*Id.* ¶ 3.) The infection caused substantial swelling on Bilik's face that was plainly visible to anyone who saw him. (*Id.* ¶ 5.) In addition, Bilik suffered extreme pain that frequently caused him to weep and rendered him unable to eat or sleep. (*Id.*) Every time a correctional officer or nurse visited his cell tier, Bilik cried out for medical assistance. (*Id.* ¶ 6.) Yet, each and every time, his pleas were ignored. (*Id.* ¶ 7.) Consequently, Bilik was left in agony from the untreated MRSA infection for a week. (*Id.*) Only after Bilik was transferred to a different prison on June 16, 2010 did he receive appropriate medical care. (*Id.* ¶¶ 7, 18.)

Later, while incarcerated at the Cook County Jail, Bilik underwent surgery to remove a large cyst on his cranial vertex.[2] (*Id.* ¶¶ 9–10.) Following the surgery, Bilik's surgeon advised him to return for a follow-up examination to ensure that the entire cyst had been removed. (*Id.* ¶ 11.) At the time of his scheduled follow-up examination, Bilik was incarcerated at Menard. (*Id.* ¶ 12.)

---

[2] The cranial vertex is the upper surface of the head.

Due to a lock-down at Menard, Bilik missed the follow-up examination, which was never rescheduled. (*Id.* ¶¶ 12, 69.)

Ultimately, the cyst did in fact grow back during Bilik's time at Menard. (*Id.* ¶ 13.) As a result, Bilik experienced intense headaches that painkillers did not sufficiently alleviate. (*Id.*) Moreover, the pain caused by the cyst was so great that it kept Bilik largely confined to his cell. (*Id.* ¶ 14.) Bilik submitted several grievances to both his counselor and a grievance officer. (*Id.* ¶ 62.) Yet he received no medical assistance in response to the grievances. (*Id.* ¶ 63.) Instead, Fedderke, a sergeant at Menard, came to Bilik's cell to demand that he stop filing grievances. (*Id.* ¶¶ 43, 63–64.) That message was delivered at the behest of Defendant Jacqueline Lashbrook, a major at Menard who had primary responsibility for the area in which Bilik was incarcerated. (*Id.* ¶¶ 40–41, 44, 63–64.) Moreover, to drive the message home, Fedderke tossed Bilik's belongings around his cell. (*Id.* ¶ 64.)

In his TAC, Bilik claims that prison officials and staff at Stateville and Menard were deliberately indifferent to his medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution. In Count I, Bilik brings a deliberate indifference claim related to the MRSA infection he suffered at Stateville. (*Id.* ¶¶ 53–58.) He names as Defendants numerous Stateville correctional officers ("Stateville COs") and nurses ("Stateville Nurses") who he alleges knew of his MRSA infection but nonetheless ignored his pleas for medical assistance. In addition, he also names Stateville's Warden, Marcus Hardy, as a Defendant. Count II asserts a deliberate indifference claim concerning the cranial cyst Bilik contends was not adequately treated during his time at Menard. (*Id.* ¶¶ 59–72.) That count names as Defendants Fedderke, Lashbrook, and Menard's Warden, Kim Butler. Finally, Count IV[3] is

---

[3] There are only three counts in the TAC. Count IV appears to have been mislabeled, as it is listed as the third and final count in the TAC.

3

another deliberate indifference claim, this one brought against Robert Shearing, a medical doctor working at Menard who Bilik alleges failed to arrange for a follow-up examination of his cyst.[4] (*Id.* ¶¶ 73–78.)

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

In each of the motions to dismiss (with the exception of Fedderke's motion), Defendants contend that Bilik does not plead sufficient facts in support of his deliberate indifference claims. Specifically, they claim that Bilik's allegations fail to demonstrate that they were personally involved in the purported constitutional deprivation and that they acted with a sufficiently culpable state of mind. Moreover, in the individual motions to dismiss, Keagle, Drop, Raheem, and Fedderke argue that the claims against them were brought after the running of the statute of limitations. The Court begins by addressing the statute of limitations defense and then addresses whether Bilik successfully states claims against Defendants.

---

[4] Shearing has opted to answer the TAC instead of filing a motion to dismiss. (*See* Dkt. No. 224.)

I. **Statute of Limitations**

A. **Keagle, Drop, and Raheem**

Although Keagle, Drop, and Raheem each filed their own motion to dismiss, all three motions are basically identical in substance. Their motions primarily contend that the claims against them must be dismissed as untimely because they were not named in the lawsuit until after the running of the statute of limitations.

The statute of limitations provides an affirmative defense to constitutional tort claims. *E.g.*, *United States v. N. Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004). Generally, a complaint need not state all facts necessary to overcome an affirmative defense, which is why it is "irregular to dismiss a claim as untimely under Rule 12(b)(6)." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (internal quotation marks omitted). Dismissal on statute of limitations grounds at the pleading stage may be warranted, however, when a plaintiff pleads facts that effectively establish the defense. *Id*.

The statute of limitations for a § 1983 claim is "governed by the personal injury laws of the state" in which the injury occurred. *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004). In the present case, the injury occurred in Illinois, so the statute of limitations is two years. *See* 735 ILCS 5/13-202. For deliberate indifference claims in which a prisoner contends that the defendants refused to treat his medical condition, every day the defendants "prolong[] [the prisoner's] agony by not treating his painful condition mark[s] a fresh infliction of punishment that cause[s] the statute of limitations to start running anew." *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001). Where the refusal continues for the entirety of the prisoner's incarceration, the statute of limitations accrues only when the prisoner is no longer in the defendants' custody

and they can no longer do anything about his condition. *Devbrow v. Kalu*, 705 F.3d 765, 770 (7th Cir. 2013).

Here, the statute of limitations began running when Bilik was transferred out of Stateville on June 16, 2010. (TAC ¶¶ 7, 18.) And while Bilik filed his original complaint on June 11, 2012, that complaint did not name Keagle, Drop, or Raheem. (*See* Dkt. No. 1.) Instead it named as Defendants only Hardy, the Illinois Department of Corrections, Wexford Healthcare, Stateville, and a medical doctor at Stateville. (*Id.*) Later, Bilik amended his complaint to include two unknown "John" and "Jane Doe" Defendants identified as Stateville medical technicians and two unknown Defendants identified as Stateville paramedics. (First Am. Compl. ("FAC"), Dkt. No. 9.) But the FAC was not filed until August 9, 2012, which was after the statute of limitations had run. Keagle, Drop, and Raheem were not formally named as Defendants until Bilik filed a second amended complaint ("SAC") on May 13, 2016. (Dkt. No. 87.)

Bilik nonetheless argues that he should be permitted to proceed on his claims because the TAC relates back to the timely-filed original complaint. Under Federal Rule of Civil Procedure 15(c)(1), an amended pleading that names or substitutes a new defendant may relate back to the timely-filed pleading so long as certain conditions are met. As relevant here, relation back will only be appropriate where the party to be brought in by the amendment "received such notice of the action that it will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C). In particular, the Court must determine whether Bilik's failure to name Keagle, Drop, and Raheem in the timely-filed original complaint was a result of a mistake, thereby allowing the TAC to relate back to the original complaint.

In the original complaint, Bilik named no member of Stateville's medical staff as a Defendant other than a single physician. But Bilik did name as a Defendant "Wexford Healthcare," which referred to Wexford Health Services, Inc. ("Wexford"), a contractor that provides healthcare services to Illinois Department of Corrections inmates. In his TAC, Bilik alleges that the Stateville Nurses, including Keagle, Drop, and Raheem, are Wexford employees. (TAC ¶ 30.) For Rule 15(c) purposes, where a plaintiff believes suing an institutional defendant like Wexford is sufficient to state a claim against its employees or agents, he has made a legal mistake supplying grounds for the relation back of a subsequent pleading to an earlier one. *Jackson v. Kotter*, 541 F.3d 688, 696 (7th Cir. 2008) ("We have explained that a legal mistake concerning whether to sue an institutional or individual defendant brings the amendment within the purview of Rule 15." (internal quotation marks omitted)).

Relation back is appropriate here because Bilik mistakenly named Wexford as a Defendant in the original complaint thinking that suing it would be sufficient to state claims related to the Stateville Nurses' conduct. *See Gaines v. Burns*, No. 18-cv-5117, 2019 WL 4261189, at *4 (N.D. Ill. Sept. 9, 2019) ("[A]ccording to Plaintiff, he simply believed that suing [the prison's healthcare contractor] was sufficient. . . . The Court therefore concludes that Plaintiff made a mistake as contemplated by Rule 15.") Indeed, after the Court advised Bilik of his potential mistake during the course of its review pursuant to 28 U.S.C. § 1915A (*see* Dkt. No. 7), Bilik promptly filed the FAC, this time naming as John and Jane Doe Defendants two Stateville medical technicians and two Stateville paramedics. For that reason, the claims against the unknown medical Defendants in the FAC relate back to the original complaint.

The question then becomes whether the SAC—the first pleading explicitly naming Keagle, Drop, and Raheem—also relates back to the original complaint. Specifically, the Court

must determine whether Bilik's lack of knowledge as to the true identities of the unknown Defendants named in the FAC was a mistake within the purview of Rule 15 that Bilik remedied in the SAC. At one time, this was a straightforward issue, as the Seventh Circuit has repeatedly held that "relation back on the grounds of mistake concerning the identity of the proper party does not apply where the plaintiff simply lacks knowledge of the proper defendant." *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006) (internal quotation marks omitted). Put differently, where "a plaintiff names a fictitious defendant like 'John Doe' because he does not know who harmed him . . . he has not made a 'mistake' concerning 'identity' within the meaning of" Rule 15(c). *Id.*

However, the Supreme Court's decision in *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010), has caused many courts in this District to question the continuing viability of the *Hall* precedent. In *Krupski*, the Supreme Court held that the Rule 15(c) inquiry focuses on "what the prospective **defendant** knew or should have known . . . not what the **plaintiff** knew or should have known at the time of filing [his] original complaint." *Id.* at 548 (emphasis in original). *Krupski* was not a John Doe case and the Seventh Circuit has never squarely addressed the impact of *Krupski* on the traditional John Doe rule addressed in *Hall*. Thus, many courts have continued to apply *Hall* in the John Doe context. *Haroon v. Talbott*, No. 16-cv-04720, 2017 WL 4280980, at *6 (N.D. Ill. Sept. 27, 2017) (listing cases). Nonetheless, the recent trend in this District is for courts to apply *Krupski* to such cases. *E.g.*, *Haroon*, 2017 WL 4280980, at *6; *Ryan v. City of Chicago*, No. 15 C 9762, 2016 WL 6582570, at *2 (N.D. Ill. Nov. 7, 2016)[5]; *White v. City of Chicago*, No. 14 cv 3720, 2016 WL 4270152, at *18 (N.D. Ill. Aug. 15, 2016). Those courts

---

[5] Notably, the *Ryan* court acknowledged that it previously applied *Hall*'s John Doe rule post-*Krupski*. *Ryan*, 2016 WL 6582570, at *2 n.4. Nonetheless, in recognition of the increasing weight of authority recognizing "a doctrinal change in the law of relation back occasioned by *Krupski* even as applied in the John Doe context," the district court decided against continuing to adhere to the *Hall* rule. *Id.* at *2 (internal quotation marks omitted).

8

generally have reasoned that "*Krupski* signaled a fundamental shift in relation-back analysis from a plaintiff focused inquiry to a defendant-focused one." *Haroon*, 2017 WL 4280980, at *7. Even in the John Doe context, the proper focus of the Rule 15(c) inquiry is not "whether the plaintiff knew or should have known the identity of the potential defendant," but "whether the potential defendant knew or should have known during the Rule 4(m) period that it would have been named as a defendant but for an error." *Id.* (internal quotation marks omitted). Accordingly, the analysis "applies whether the plaintiff sues the wrong defendant because of a misunderstanding or sues a fictitious defendant because of a lack of knowledge." *Id.* This Court finds the analysis in these recent cases persuasive and therefore concludes that "the traditional John Doe rule should not be applied to prevent relation back if a plaintiff seeks to determine the identity of the John Doe defendant[s] before the statute of limitations expires but is unable to do so." *White*, 2016 WL 4270152, at *20.

Notably, Keagle, Drop, and Raheem do not contend that *Hall*'s traditional John Doe rule should apply or otherwise argue against a defendant-focused Rule 15(c) analysis. Instead, they argue that the FAC failed to give adequate notice to them such that they knew or should have known that Bilik intended to bring his claim against them by naming John and Jane Doe Stateville medical staff Defendants. In particular, they claim that Bilik describes each John and Jane Doe with particularity by including their place of employment and job title. And while Bilik identifies two unknown Defendants as paramedics at Stateville, Keagle, Drop, and Raheem emphasize that he does not identify a single John or Jane Doe as a Stateville nurse. Moreover, while he names multiple female nurses in the TAC, the FAC names only a single female paramedic.

The Court declines to rule as a matter of law at the pleading stage that the FAC provided Keagle, Drop, and Raheem insufficient notice. What a Defendant knew or should have known and

9

when they knew it is generally an issue for summary judgment. *See, e.g.*, *Williams v. City of Chicago*, No. 14 C 6959, 2017 WL 1545772, at *3 (N.D. Ill. Apr. 28, 2017) ("The Court must await a more developed record, which will reveal what the defendants knew or should have known and when they knew it, before ruling on the statute of limitations issues defendants have raised in their response briefs." (internal quotation marks and citations omitted)); *Ryan*, 2016 WL 6582570, at *2 (same). Here, the allegations in the FAC pertaining to the John and Jane Doe Defendants are sufficient to survive a motion to dismiss. While no John or Jane Doe was identified as a Stateville nurse, it is unreasonable to require Bilik to have perfect knowledge of job titles. The FAC identifies not only unknown Stateville paramedic Defendants, but also unknown Stateville medical technician Defendants. Each position is similar enough to a nurse that it is conceivable that Bilik simply made a mistake concerning job titles. Moreover, further development of the factual record could reveal that Stateville does not employ paramedics or medical technicians and thus it should have been reasonably clear that the John and Jane Does referred to nurses rather than paramedics or medical technicians. Consequently, there is no basis to dismiss Keagle, Drop, or Raheem at this stage on statute of limitations grounds.

### B. Fedderke

Fedderke also moves to dismiss the claims against him on statute of limitations grounds. The statute of limitations for the claim against Fedderke began to run when Bilik was released from custody at Menard in the late fall of 2015.[6] (TAC ¶ 19.) And because Fedderke claims he

---

[6] Fedderke claims in his motion to dismiss that Bilik left Menard on February 3, 2016. (Fedderke's Mem. in Supp. of Mot. to Dismiss at 4, Dkt. No. 227.) In his response, Bilik agrees that he was released from Menard on February 3, 2016. (Pl.'s Consolidated Opp'n to Keagle, Drop, Raheem, and Fedderke's Mot. to Dismiss at 6, Dkt. No. 236.) However, the exact release date was not pleaded in the TAC and the Court declines to convert Fedderke's motion into one for summary judgment by considering facts from outside the TAC. Therefore, the Court uses late fall 2015 as Bilik's relevant release date. Ultimately, the exact date is immaterial as Bilik's claim against Fedderke would be timely no matter which date is used.

was not named as a Defendant until the TAC was filed on November 22, 2018, the claim against him is untimely. However, Fedderke is incorrect in stating that he was first named as a Defendant in the TAC. Rather, the SAC names "Sergeant Federke" as a Defendant and was timely filed on May 13, 2016. (SAC ¶¶ 1, 18.) While the SAC appears to misspell Fedderke's last name and fails to provide a first name, that is simply the kind of "mistake" that indisputably falls within the ambit of Rule 15(c). For that reason, the claim against Fedderke is timely. Moreover, since Fedderke does not move to dismiss on any other ground besides the running of the statute of limitations, his motion to dismiss is denied.

## II. Sufficiency of the Allegations

### A. Stateville Nurses and Stateville COs

In addition to arguing for dismissal based on the running of the statute of limitations, Keagle, Drop, and Raheem also contend that the TAC fails to state a claim against them. Similarly, the consolidated motion to dismiss contends that the TAC fails to state claims against the remaining Stateville Nurses and the Stateville COs. Given the substantive overlap in the arguments for dismissal as to these Defendants, the Court considers them together in determining whether the TAC successfully states a claim.

To state a claim for deliberate indifference to a prisoner's medical needs, a plaintiff must establish that he suffered "an objectively serious medical condition" and "an official's deliberate indifference to that condition." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). No Defendant in this case contests that Bilik's MRSA was an objectively-serious medical condition. Instead, they simply claim that the allegations fail to show that either the Stateville Nurses or the Stateville COs were deliberately indifferent to Bilik's medical needs.

11

Deliberate indifference is established where a plaintiff shows that the defendant "acted with a sufficiently culpable state of mind." *Id.* at 751 (internal quotation marks omitted). "A prison official acts with a sufficiently culpable state of mind when he knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Id.* "The deliberate indifference standard reflects a mental state somewhere between the culpability poles of negligence and purpose, and is thus properly equated with reckless disregard." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015).

The TAC's allegations concerning the Stateville Nurses and Stateville COs are the same. Both groups of Defendants allegedly covered at least one eight-hour shift on Bilik's cell tier at Stateville. (TAC ¶¶ 25, 31.) Moreover, both groups' job duties entailed personally checking in on Bilik. (*Id.* ¶¶ 26, 32.) And Bilik alleges that he called out to each and every Stateville Nurse and Stateville CO, pleading for help. (*Id.* ¶¶ 6, 55.) It should have been obvious that Bilik was dealing with a serious medical condition, given that the MRSA infection caused severe and plainly visible swelling on his face. (*Id.* ¶¶ 5, 56.) Nonetheless, his pleas were ignored and he received no treatment whatsoever until after he was transferred out of Stateville. (*Id.* ¶¶ 7, 58.) In short, Bilik alleges that he was suffering a serious medical condition that was obvious to anyone who saw him. Despite each Stateville Nurse and Stateville CO seeing the swelling on Bilik's face and hearing his pleas for help, they ignored him.

This is not a case where the Stateville Nurses are alleged to have provided insufficient medical care. *See McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013) ("Deliberate indifference is not medical malpractice . . . ." (internal quotation marks omitted)). Nor is this a case where Bilik was under the care of medical professionals such that the Stateville COs could rely upon those professionals' treatment decisions and judgment. *See Bond v. Aguinaldo*, 228 F. Supp. 2d 918,

920 (N.D. Ill. 2002) ("Except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals."). Rather, Bilik claims that he received no care whatsoever. And because "it is well settled that providing no medical care in the face of a serious health risk constitutes deliberate indifference," *Ortiz v. City of Chicago*, 656 F.3d 523, 538 (7th Cir. 2011), Bilik has stated a claim against the Stateville Nurses and the Stateville COs.

### B. Hardy

Bilik also contends that Hardy, Stateville's Warden, was deliberately indifferent to his MRSA infection. Unlike the Stateville Nurses and Stateville COs, Bilik does not allege that Hardy personally heard his pleas for help or saw the swelling on his face. Instead, Bilik simply alleges that Hardy knew or should have known of Bilik's medical condition "based on reports from [Hardy's] staff and on Plaintiff's grievances or attempts at grievances." (TAC ¶ 57.)

To state a deliberate indifference claim against a prison supervisor, "a § 1983 plaintiff may not rely on a theory of respondeat superior." *Perez*, 792 F.3d at 781. Rather, the plaintiff must "allege that the defendant, through his or her own conduct, has violated the Constitution." *Id.* "[A]n official satisfies the personal responsibility requirement . . . if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent." *Arnett*, 658 F.3d at 757 (internal quotation marks omitted). Put differently, "deliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez*, 792 F.3d at 781 (internal quotation marks omitted).

Bilik claims that Hardy was personally involved based on his receipt of Bilik's grievances and reports from staff. Indeed, "[a]n inmate's correspondence to a prison administrator may . . . establish a basis for personal liability under § 1983 where that correspondence provides

13

sufficient knowledge of a constitutional deprivation." *Perez*, 792 F.3d at 781–82. But "[m]ere receipt of grievances from a prisoner is insufficient to establish that a prison warden was personally involved in any deficient medical care provided to the prisoner." *McDowell v. Pfister*, No. 13 C 3375, 2017 WL 359199, at *2 (N.D. Ill. Jan. 23, 2017). Rather, the "plaintiff must demonstrate that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an excessive risk to inmate health or safety." *Arnett*, 658 F.3d at 755 (internal quotation marks omitted).

Bilik fails to plead sufficient facts regarding his grievances and the staff reports to survive Hardy's motion to dismiss. He does not even allege facts showing that grievances were sent to Hardy or Hardy otherwise received them. Nor does he provide any details as to the content of staff reports to show that they gave Hardy sufficient notice of Bilik's medical condition. Consequently, Bilik fails to state a claim against Hardy. *See Hardy v. Wexford Health Sources, Inc.*, No. 12 C 6554, 2015 WL 1593597, at *8 (N.D. Ill. Apr. 2, 2015) (dismissing claim against warden where the plaintiff failed to allege the content of the grievances sent to the warden).

### C. Lashbrook

Also in the TAC, Bilik claims to have suffered from a large, painful cranial cyst for which he was denied treatment while incarcerated at Menard. Lashbrook was one of the Defendants named in Bilik's claim related to his cyst. As a major at Menard, Lashbrook "had primary responsibility for the minimum-security area of Menard in which Bilik was housed, including, but not limited to, receiving inmate grievance reports." (TAC ¶ 41.) Once again, no Defendant argues that Bilik's cyst did not amount to an objectively serious medical condition. Instead, Lashbrook contends that the TAC fails to allege her personal involvement beyond responding to Bilik's grievances.

14

The Court disagrees. According to the TAC, Bilik filed grievances related to his cyst which were received by Lashbrook. (TAC ¶¶ 41, 61–63.) Instead of considering Bilik's health concerns, Lashbrook sent Fedderke to shake down Bilik's cell and deliver a message to "stop filing grievances." (*Id.* ¶¶ 63–66.) These allegations, if true, would show that Lashbrook did not just ignore Bilik's requests for medical attention, but actively discouraged Bilik from seeking appropriate medical care. By ordering a subordinate to harass Bilik in response to his medical issues, Lashbrook evinced a sufficiently culpable state of mind. Thus, Bilik has successfully stated a claim against Lashbrook.

### D. Butler

Finally, Bilik seeks to hold Menard's warden, Butler, responsible for deliberate indifference to his cranial cyst. However, Bilik's allegations as to Butler fail to state a claim because Bilik has not plausibly alleged that his grievances gave Butler sufficient notice of any Eighth Amendment violation. He simply alleges that he complained about pain from the cranial cyst. But he does not state that he complained in those grievances that he was being denied appropriate medical care or that he was in fact discouraged by Lashbrook and Fedderke from even filing grievances concerning his pain.

To state a claim against Butler, Bilik's allegations must support a reasonable inference that Butler knew Bilik was not receiving treatment for his cyst, not just that she knew about his medical condition. *See Young v. Wexford Health Sources*, No. 10 C 8220, 2012 WL 621358, at *5 (N.D. Ill. Feb. 14, 2012) ("Though a prison official has no substantive constitutional duty to respond to grievances, he or she does have a duty to prevent and remedy known constitutional violations within [her] supervision and control."); *see also Neely v. Randle*, No. 12 C 2231, 2013 WL 3321451, at *3 (N.D. Ill. June 29, 2013) (dismissing claim against warden where the plaintiff

15

alleged "no actual involvement by the warden[] in his medical care other than by dealing with, or allegedly ignoring, his grievances"). For that reason, Bilik's claim against Butler is dismissed.

## CONCLUSION

For the foregoing reasons, Keagle, Drop, Raheem, and Fedderke's motions to dismiss (Dkt. Nos. 194, 205, 217, 225) are denied. The consolidated motion to dismiss (Dkt. No. 210) is granted as to Hardy and Butler; the claims against them are dismissed. The consolidated motion is denied as to the Stateville Nurses, the Stateville COs, and Lashbrook.

ENTERED:

Dated: September 27, 2019

Andrea R. Wood
United States District Judge