IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD BILIK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 12-cv-04532 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| MARCUS HARDY, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This case concerns medical care received by Plaintiff Richard Bilik while in the custody of the Illinois Department of Corrections ("IDOC"). First, Bilik suffered a Methicillin-Resistant Staphylococcus Aureus ("MRSA") infection while incarcerated at Stateville Correctional Center ("Stateville"), and later, he experienced substantial pain from a cyst on his cranium while housed at Menard Correctional Center ("Menard"). Bilik claims he did not receive constitutionally sufficient medical treatment for either condition. As a result, he has filed suit under 42 U.S.C. § 1983 against various medical staff at Stateville and Menard alleging deliberate indifference to his serious medical needs in violation of the Eighth and Fourteenth Amendments. Now before the Court is the motion for summary judgment filed by Defendants Athena Rossiter, Gary Drop, Stacey Keagle, and Robert Shearing, in which they contend that Bilik failed to exhaust his administrative remedies before filing suit. (Dkt. No. 326.) For the reasons that follow, Defendants' motion is granted in part and denied in part.

## BACKGROUND

The following facts are undisputed.

At all relevant times, Bilik was a prisoner in the custody of the IDOC. (Pl.'s Resp. to Defs.' Statement of Material Facts ("PRDSF") ¶ 1, Dkt. No. 343.) Between February 8, 2010 and June 16, 2010, Bilik was incarcerated at Stateville. (*Id.* ¶ 8.) While there, Bilik's face became infected with MRSA on June 9, 2010, which caused him significant pain and swelling. (PRDSF ¶¶ 9–10; Defs.' Resp. to Pl.'s Statement of Additional Facts ("DRPSAF") ¶¶ 1–2, Dkt. No. 348.) It was not until he was transferred to a different facility on June 16, 2010 that Bilik received medical care for the MRSA infection. (DRPSAF ¶ 4.) He was transferred back to Stateville a month later. (PRDSF ¶ 8; DRPSAF ¶ 4.) Bilik later testified that he wrote a grievance about the treatment he received for the MRSA infection during his earlier incarceration at Stateville. (PRDSF ¶ 29; DRPSAF ¶ 4.)

On December 15, 2012, Bilik, then incarcerated at Lawrence Correctional Center ("Lawrence"), submitted a grievance related to a cyst on his head. (DRPSAF ¶ 7.) In the grievance, Bilik stated that he had been scheduled for an ultrasound of a "fluid build-up under the flesh," but the "healthcare staff of Wexford" took no action related to his condition.[1] (*Id.*) The grievance was denied on an emergency basis. (*Id.* ¶ 8.) That decision was affirmed on subsequent rounds of review. (*Id.*) On June 20, 2013, Bilik appealed the denial of his grievance to the Administrative Review Board. (*Id.*) Meanwhile, on June 7, 2013, Bilik filed another grievance related to the cyst on his head, in which he claimed to be suffering from "severe pain from an existing cyst atop the vertex of [his] head" and requested treatment. (*Id.* ¶¶ 10–11.) A

---

[1] Wexford Health Sources, Inc. ("Wexford") is a private company that contracts with the State of Illinois to provide healthcare services to inmates at IDOC facilities. Defendants Rossiter, Drop, Keagle, and Shearing were employed by Wexford.

week after filing his grievance, Bilik was transferred from Lawrence to Menard. (PRDSF ¶ 8.) Bilik filed no further grievances related to his cyst after being transferred to Menard. (*Id.* ¶¶ 39–40.)

As a result of the allegedly inadequate medical care he received for his MRSA infection and cyst, Bilik brought the present lawsuit. Relevant here, the Third Amended Complaint asserts a deliberate indifference claim related to the MRSA infection against Defendants Rossiter, Drop, and Keagle (Count I),[2] and a deliberate indifference claim related to the cyst against Defendant Shearing, a doctor who practiced at Menard (Count IV).[3]

## DISCUSSION

Defendants seek summary judgment as to Counts I and IV due to Bilik's purported failure to exhaust his administrative remedies. The Prison Litigation Reform Act of 1995 ("PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's "exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Moreover, the statute's language "is 'mandatory': An inmate 'shall'

---

[2] Defendants assert that one of the Stateville Defendants, Stacey Keagle, had stopped working at Stateville by the time of Bilik's MRSA infection. (PRDSF ¶ 4.) However, whether Keagle was working at Stateville in June 2010 is disputed. (PRDSF ¶ 4; DRPSAF ¶ 13.) In any case, that issue goes more to the merits of any claim against Keagle rather than to whether Bilik exhausted his administrative remedies as to the MRSA infection.

[3] There are only three counts in the Third Amended Complaint and the third count was apparently mislabeled as Count IV. Count II, which asserted claims against various IDOC officials based on the same cranial cyst as Count IV, has been dismissed.

bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 578 U.S. 632, 638 (2016).

The PLRA's language also makes plain that an inmate must "exhaust available remedies, but need not exhaust unavailable ones." *Id.* at 642. "State law determines the administrative remedies that a state prisoner must exhaust for PLRA purposes." *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016). The IDOC utilizes a three-stage grievance process. *See generally* Ill. Admin. Code tit. 20, § 504.800 *et seq.* An inmate must follow each of the steps prescribed by the administrative rules for prison grievances prior to filing a lawsuit. *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020). Any claim that is not exhausted is "procedurally barred from consideration." *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016). "Exhaustion is an affirmative defense, and the burden of proof is on the defendants." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Here, Defendants claim that Bilik failed to exhaust his administrative remedies because he did not file any grievance concerning his MRSA infection and he did not file a grievance regarding his cranial cyst while incarcerated at Menard. The Court addresses each contention in turn.

### I. Count I—MRSA

Defendants contend that summary judgment should be granted in favor of Defendants Rossiter, Drop, and Keagle with respect to Count I because Bilik never filed any grievances concerning his MRSA infection.

An IDOC inmate must file a written grievance within 60 days of the incident or problem being grieved. (PRDSF ¶¶ 12–14); Ill. Admin. Code tit. 20, § 504.810(a). It is undisputed that Stateville has no record of Bilik filing a grievance for his MRSA infection. (PRDSF ¶¶ 27, 34–38.) However, Bilik has testified that he did timely file a grievance regarding the allegedly

4

inadequate care he received at Stateville for his MRSA infection. (PRDSF ¶¶ 28–29; DRPSAF ¶¶ 4–5.) Specifically, he testified that he wrote the grievance upon his return to Stateville in July 2010 and placed it in his cell door to be picked up, and that the grievance was presumably received by Stateville staff, as it "disappeared." (PRDSF ¶¶ 28, 30; DRPSAF ¶ 5.) Although Bilik never received a response to that grievance, he declined to file another grievance because he had been warned that he was "not allowed to continue grieving the same issues over and over and that that was prohibited." (PRDSF ¶ 31; DRPSAF ¶ 6.)

The Court finds that Bilik's testimony provides competent evidentiary support for his contention that he did, in fact, file a MRSA-related grievance. His testimony shows that he wrote a grievance for the lack of medical care he received for his MRSA infection while at Stateville and then placed the grievance in his cell door, which is well-recognized means of delivering a grievance to prison officials. *See, e.g.*, *Wallace v. Baldwin*, 55 F.4th 535, 540 n.3 (7th Cir. 2022) ("[The plaintiff] had successfully submitted grievances by leaving them in the cell bars, and Defendants confirmed that this was an acceptable method of filing a grievance."). Thus, Bilik could reasonably have believed that he had properly filed the grievance when it subsequently "disappeared." Although Bilik never received a response to the grievance, Illinois regulations governing prison grievances provide no guidance to inmates on how to proceed when their grievance is not met with a timely response or when the grievance is lost. *Dole*, 438 F.3d at 811. Bilik was therefore under no obligation to follow up on the missing grievance. *Id.* at 811–12. Further, that Bilik received no response to the grievance also is evidence that he exhausted his remedies, as the Seventh Circuit has held that "[a]n administrative scheme can be 'unavailable' to a prisoner when a prison fails to respond to a prisoner's grievance and, in so doing, prevents that prisoner from exhausting administrative remedies." *Reid v. Balota*, 962 F.3d 325, 329 (7th

5

Cir. 2020); *see also Mason v. Snell*, No. 19-cv-1019-NJR, 2021 WL 4355400, at *5 (S.D. Ill. Sept. 24, 2021) ("If [the plaintiff] did submit this grievance and never received a response, then his attempts at exhaustion would be deemed thwarted, and he would be allowed to proceed with his lawsuit.").

Defendants argue that Bilik's testimony is too implausible to create a genuine issue of fact regarding whether he filed a grievance concerning his MRSA infection. First, they note the absence of a copy of any MRSA-related grievance in the record. However, Bilik claims that he did not have an opportunity to copy the grievance before it was picked up from his cell door. (PRDSF ¶ 30; DRPSAF ¶ 5.) The fact that Stateville has no record of such a grievance does not render Bilik's testimony implausible. "[G]rievances and other paperwork are not infrequently lost in the prison administrative system." *Pyles*, 829 F.3d at 867. And a prison's grievance records are "obviously only accurate as to the grievances that are actually inputted into the system by prison officials." *Knighten v. Mitcheff*, No. 1:09-cv-333-SEB-TAB, 2011 WL 96663, at *2 (S.D. Ind. Jan. 10, 2011). Put differently, "even if a prisoner properly submits a grievance to an appropriate prison official, if the prison grievance specialist does not receive it, either because it is lost or forgotten . . . there would be no record of its having been filed." *Id.*

Defendants also note that, during his time in IDOC custody, Bilik was a prolific filer of grievances and would regularly file multiple grievances on identical issues. (*See* PRDSF ¶¶ 23, 32–33.) Defendants contend that, given his normal practice, there is good reason to doubt Bilik's testimony that he filed even a single grievance concerning his MRSA infection—if it is true that he filed a MRSA-related grievance, it would be expected that his MRSA complaint would be recorded across multiple grievances. Yet the evidence of Bilik's past practice cuts both ways. While Bilik commonly filed multiple grievances on the same issue, he also correctly understood

6

from his experience with the grievance process that there was "no obligation that [he had] to keep rewriting the same grievance over and over." (DRPSF ¶ 31); *see also Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 833–34 (7th Cir. 2020) ("Although a prisoner must take all steps the prison offers, and do so properly, this does not mean that the inmate must go beyond the established system and guess at some other way of attracting the attention of the prison authorities." (citations omitted)). Bilik's "experience with the manner in which the process was supposed to work . . . makes it reasonable for [him] to have believed that he was required to wait until he received a response to his initial grievance" before taking further action. *Knighten*, 2011 WL 96663, at *3.

Finally, Defendants dismiss Bilik's assertion that he was told not to file a duplicate grievance as inadmissible hearsay. Despite Defendants' suggestion to the contrary, however, this evidence does not appear to be offered for the truth of the matter asserted—*i.e.*, that it was true that he was prohibited from continuing to grieve the same issues over and over again—but rather it tends to show what Bilik was told and the effect that it had on his subsequent action (or inaction). In any case, Bilik has presented sufficient evidence that he filed one grievance and, if true, he did not necessarily have to file another grievance to exhaust his administrative remedies.

In sum, the Court disagrees with Defendants' contention that Bilik's testimony about filing a MRSA-related grievance fails to create a dispute of fact on that issue. Instead, Defendants can only point to reasons why the Court should doubt Bilik's credibility. Such questions must be resolved by way of an evidentiary held pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) ("We held [in *Pavey*] that a prisoner is not entitled to a jury trial on contested issues regarding his failure to exhaust; instead, a hearing before the district court suffices to resolve any such questions.").

Defendants have already requested a *Pavey* hearing in the event the Court denies summary judgment, and the Court agrees that such a hearing will be necessary to evaluate Bilik's claim that he properly grieved the supposedly inadequate treatment that Stateville Defendants provided for his MRSA infection. *See id.* at 591 ("The purpose of a *Pavey* hearing is to resolve disputed factual questions that bear on exhaustion, including what steps were taken . . . ."). Accordingly, Defendants' motion for summary judgment as to Count I is denied.

## II. Count IV—Cyst

In Count IV, Bilik alleges that Defendant Shearing failed to properly care for the cyst on his head. Unlike with the MRSA infection, the record does contain evidence that Bilik filed two grievances regarding the cyst. (DRPSAF ¶¶ 7–12.) However, both grievances were filed while Bilik was incarcerated at Lawrence. Shortly after he filed the second cyst-related grievance, Bilik was transferred to Menard, and he did not file another grievance regarding the care he received there, where Shearing was responsible for treating his cyst.

Bilik contends that his two grievances were sufficient for exhaustion purposes even though he filed them while incarcerated at Lawrence. He emphasizes that the first grievance was directed generally at Wexford staff—thus not specific to any particular prison—and both were sufficient to apprise the IDOC of the issue. Consequently, Bilik argues that he did not need to file a new grievance regarding the cyst following his transfer to Menard.

As Bilik correctly observes, the Seventh Circuit has held that, "[i]n order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Rather, "[s]eparate complaints about particular incidents are only required if the underlying facts or the complaints are different." *Id.* The Court agrees that Bilik's cyst qualified as a continuing violation during his incarceration at Lawrence. Yet the facts

8

regarding the treatment of Bilik's cyst changed upon his transfer to Menard—namely, he was under the care of a new doctor, Shearing. *Anderson v. Larry*, No. 21-cv-944, 2022 WL 17357434, at *14 (N.D. Ill. Dec. 1, 2022) (explaining that the facts underlying an otherwise continuing violation change upon an inmate's transfer to a new prison because the alleged "instances of mistreatment occurred at different prisons"); *Burt v. Berner*, No. 13-CV-794-NJR-DGW, 2015 WL 1740044, at *4 (S.D. Ill. Apr. 14, 2015) (holding that an inmate cannot rely upon a grievance filed at his former prison "to exhaust his claims for the denial of medical care that occurred at a wholly different location and involved completely different individuals operating under different circumstances"); *see also Barrow v. Wexford Health Sources, Inc.*, No. 3:14-cv-941-NJR-DGW, 2015 WL 11539508, at *5 (S.D. Ill. July 16, 2015) ("Plaintiff's change in treatment providers necessarily changed the conditions of the medical care provided, necessitating a new grievance."). Grievances concerning the supposedly inadequate care Bilik received for his cyst at Lawrence cannot reasonably be interpreted as complaining about a doctor who, at the time Bilik's grievances were filed, had not yet had the opportunity to treat his condition.

To exhaust his administrative remedies as to any insufficient treatment he received for his cyst while incarcerated at Menard, Bilik had to file a new grievance following his transfer to that facility. Because Bilik did not do so, he failed to exhaust his administrative remedies for the deliberate indifference claim set forth at Count IV. Summary judgment is therefore granted in favor of Shearing.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment on administrative exhaustion (Dkt. No. 326) is granted in part and denied in part. Summary judgment is granted in favor of Defendant Shearing as to Count IV. However, the motion is

9

denied as to Count I, and the Court will hold an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), to determine whether Bilik failed to exhaust his administrative remedies as to that count.

ENTERED:

Dated: June 7, 2023

_____
Andrea R. Wood
United States District Judge